A. Hovey-King v. Commissioner.
Hovey-King v. Commissioner
Docket No. 19993.
United States Tax Court
1950 Tax Ct. Memo LEXIS 221; 9 T.C.M. (CCH) 297; T.C.M. (RIA) 50089; April 7, 1950
A. Harding Paul, Esq., for the petitioner. Paul E. Waring, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The respondent determined a deficiency in the income tax of petitioner for the calendar year 1943, in the amount of $41,521.91. In an amended answer filed at the hearing, the respondent asks that the deficiency be increased to $84,418.09. The issues are: (1) What portion, if any, of the sum of $65,000, representing additional compensation for services rendered by the petitioner, is taxable to him in 1942, and what portion, if any, is taxable to him in 1943? (2) Is the petitioner taxable during the year 1942, on the sum of $50,749.13 (representing the face value of a note in the amount of $53,749.13, less $3,000 received in cash and reported) received by *222 him during that year? The second issue was raised by the respondent in his amended answer. The parties are in agreement that another issue relating to the failure of the respondent to allow petitioner credit for $5,134.50 income tax paid on 1942 income will be settled under Rule 50. Findings of Fact The petitioner, a resident of Falls Church, Virginia, filed his income tax returns for the years 1942 and 1943 with the collector of internal revenue for the district of Virginia. The returns were filed on the cash receipts and disbursements basis. The aforesaid returns were prepared for petitioner by a certified public accountant who was employed as an accountant or auditor by both the Paving Supply & Equipment Co., a District of Columbia corporation (sometimes hereinafter referred to as the old corporation), and by the Paving Supply & Equipment Co., a Delaware corporation (sometimes hereinafter referred to as the new corporation). The income tax returns of the old corporation were prepared and filed on an accrual basis for fiscal years ended February 28, except that a short period return was filed on an accrual basis for the fiscal period March 1, 1942, to September 30, 1942. The *223 income tax returns of the new corporation were prepared and filed on an accrual basis for fiscal years ended May 31, except that a short period return was filed on an accrual basis for the fiscal period October 1, 1942, to May 31, 1943. During most of the year 1942 the petitioner was the president of either the old or the new corporation, and he was president of the new corporation during all of the year 1943. The old corporation was incorporated under the laws of the District of Columbia on October 1, 1934. Paul Townsend owned all of its capital stock from the time of its incorporation until November 25, 1940, the time of his death. Petitioner met Paul Townsend in February 1935, and they entered into an agreement whereby the petitioner was to join in a construction equipment and supply business to be operated by the old corporation and that petitioner should receive 40 per cent of the net income of the corporation prior to the computation of Federal and state income taxes. As of February 28, 1940, petitioner had overdrawn the amounts due and payable to him as salary and as his share of the income by the sum of $5,247.70. On March 1, 1940, this indebtedness of petitioner was *224 forgiven by the old corporation at the direction of Paul Townsend. During the period from 1935 to November 25, 1940, petitioner and Paul Townsend had several talks with reference to the acquisition by petitioner of a stock interest in the corporation, and Townsend indicated that something would be done to give petitioner such an interest, but at the time of Townsend's death he owned all of the stock of the old corporation. As of February 28, 1942, the old corporation owed the petitioner the sum of $53,749.13, on account of his share in the profits resulting from sales. Up to that time the basis of the petitioner's participation in the business had been entirely verbal and petitioner, who was not in the best of health, "wanted something, just a piece of paper, to show where he stood with the company." On February 28, 1943, the old corporation issued a noninterest bearing note to him in the amount of $53,749.13. The note contained no maturity date. It was intended to be used as evidence of the obligation of the company to petitioner in the event of some unforeseen happening, and was not issued in payment of the corporation's obligation to pay petitioner a share of its profits. OnMarch 5, 1942, a *225 check of the old corporation in the amount of $3,000, signed by its secretary-treasurer and by petitioner, was issued to petitioner. This check was cashed on March 7, 1942, and petitioner made the following endorsement on the back of the note: "Rc'd. on acct. 3/7/42 - $3,000.00." The balance sheets of the old corporation set forth in its income tax return for the year ended February 28, 1942, record the following assets and liabilities as of February 28, 1941, and February 28, 1942: 2/28/41
2/28/42
ASSETS: Cash
$ 4,838.35
$ 68,989.81
Notes and Accounts Rec.
157,429.09
235,286.82
Inventories
110,155.87
133,674.08
Depreciable Assets
14,275.74
13,929.21
other Assets
2,468.20
20.00
Total
$289,167.25
$451,899.92
LIABILITIES: Accounts Payable
$117,067.09
$171,585.84
Bonds, notes and mort-
gages payable
141,641.67
154,352.06
Accrued Income Taxes
2,872.23
57,916.16
Capital Stock (Common)
1,000.00
1,000.00
Paid-in Surplus
17,000.00
17,000.00
Earned Surplus
9,586.26
50,045.86
Total
$289,167.25
$451,899.92
The heirs of Paul Townsend desired that petitioner continue with the company, and on or about March 2, 1942, an agreement *226 was entered into between the petitioner and the widow and father of Paul Townsend. As the result of this agreement the petitioner acquired 48 shares of the stock of the old corporation on March 2, 1942, the widow 48 shares, and the father 2 shares. The stock was given to petitioner for the purpose of keeping him with the company. On March 31, 1942, the petitioner wrote the following letter to the "Board of Directors and Stockholders" of the old corporation: "On February 28, 1942, your Company was indebted to me in the sum of $53,749.13, on account of my share in the profits resulting from sales. On March 2, 1942, I was made a stockholder of the Company. I agreed at that time, as consideration for the stock, to terminate my contract with the Company under which I share in profits from certain sales, within the fiscal year, or as soon as a successor corporation is formed to take over the business of the Company. "On March 7, 1942, I drew $3,000 against the said indebtedness, leaving a balance of $50,749.13. In view of the financial condition of the Company, of my desire to build up its business, and of the business to be expected if its financial condition is made stronger, it *227 is my opinion that it is desirable from the standpoint of the Company, for credit and other purposes, and from the standpoint of myself as a stockholder, that the undivided surplus of the Company be increased by my cancelling the existing indebtedness to me. I therefore hereby cancel the obligation of the Company to me in the sum of $50,749.13, return herewith the note of the Company dated February 28, 1942, marked "paid", and request the Directors to take appropriate action to the end that the existing obligation of the Company to me be cancelled." The petitioner wrote across the face of the $53,749.13 note "Paid as per letter Mar. 31-42 A. Hovey-King,"and at a special meeting of the board of directors of the old corporation held March 31, 1942, the offer of petitioner "to make a contribution to the undivided surplus of the Company by the cancellation of the existing indebtedness of the Company to him in the amount of $50,749.13" was accepted. The old corporation was liquidated and dissolved on September 30, 1942. The new corporation was incorporated on October 1, 1942, under the laws of the State of Delaware. On the same date the petitioner wrote the following letter to the *228 board of directors of the corporation: "Under my present arrangement with the Company I am entitled to receive as my share in the profits arising under special agency contracts and as a result of sales by the Company a sum in excess of $50,000. In addition, under outstanding contracts already signed, I will be entitled to receive very substantial amounts which, before the close of the calendar year should, in my opinion, reach an additional sum in excess of $100,000. "Under date of March 2, 1942, I agreed that, prior to the close of the fiscal year, or at the time of any re-organization of of the Company, I would make a different arrangement respecting my compensation then that under which I have been sharing in the profits arising out of sales both by the corporation and under special agency contracts. In view of the fact that the reorganization is taking place this day, and in order to place the new Company in a stronger financial position than it might otherwise be, I propose the following: "In lieu of all amounts to which I am now entitled or will be entitled to receive pursuant to sales by the Company and as special agent or otherwise, in addition to salary, I be paid, in *229 addition to salary, the sum of $65,000, payable as follows: $20,000 upon approval of my proposal by the Board of Directors and the Stockholders $15,000 January 2, 1943 $15,000 March 1, 1943 $15,000 June 1, 1943 "The proposal to spread payments is for the purpose of preserving the liquidity of both the old Company and the new Company. In the event of future legislation, State or Federal, changing the situation of the new or old Company or of myself, or of third parties, under contracts with or sales for third parties, or commissions or other payments arising thereunder on account of the sales mentioned above, this proposal and agreements and payments thereunder will be subject to revision. "Future payments are to be evidenced by three non-interest bearing notes for $15,000 each, payable January 2, 1943, March 1, 1943, and June 1, 1943, respectively. "If this proposal be approved by the Board and by the Stockholders, then any and all existing arrangements or contracts whereby I share in the profits from sales of the Company or special agency contracts will terminate as of the close of business September 30, 1942." At a special meeting of the directors of the Paving Supply *230 and Equipment Co. held on October 1, 1942, the proposal of the petitioner as set forth in his letter was accepted. The balance sheet included in the return of the new corporation for the period October 1, 1942, to May 31, 1943, indicates that as of October 1, 1942, the company had the following assets and liabilities: ASSETS
Cash
$102,865.86
Notes & accts. receivable
320,937.71
Inventories
107,802.71
Other assets
88,207.40
$619,813.68
LIABILITIES
Accounts payable
$287,943.66
Bonds, notes and mortgages payable
129,773.90
Income taxex
102,096.12
Capital stock
100,000.00
$619,813.68
In its income and declared value excessprofits tax return for the eight-month period ended May 31, 1943, the new corporation reported a net income of $106,392.39. In accordance with the authorization of the board of directors, the new corporation paid to petitioner on October 20, 1942, $20,000 in cash, and gave him three notes for $15,000 each, having maturity dates of January 2, 1943, March 1, 1943, and June 1, 1943. The notes, which contained a provision for interest at 6 per cent per annum, were delivered to the Munsey Trust Co., a banking institution located *231 in Washington, D.C., for collection. The provision for interest was inserted in the notes by mistake by the bookkeeper of the new corporation. The three notes were paid by the new corporation at the Munsey Trust Co., with checks signed on behalf of the corporation by petitioner in the following total amounts: Date
Principal
Interest
Total
December 1, 1942
$15,000.00
$150.00
$15,150.00
March 1, 1943
15,000.00
377.50
15,377.50
June 1, 1943
15,000.00
607.50
15,607.50 The total amount collected (principal plus interest) was credited to the account of petitioner in his account at the Munsey Trust Co. All interest credited to petitioner's account was returned by him to the new corporation when he made final settlement with that corporation. Petitioner reported on his individual income tax return for the calendar year 1942, the following sums as compensation received by him during that year: The Paving Supply and Equipment
Company - salary
$16,916.67
The Paving Supply & Equipment Co. -
salary
6,250.00
The Paving Supply and Equipment
Company - on account of 1941 share
of profits in accordance with agree-
ment
3,000.00
The Paving Supply and Equipment
Company - as special compensation
(See below)
8,125.00
$34,291.67
*232 This latter item of $8,125.00 is 1/8 of a special compensation of $65,000, received during the year for services rendered over a period of eight years. The accountant who prepared this return for petitioner believed that the three $15,000 notes correctly provided for the payment of interest and therefore included them at their face value in computing, under the provisions of section 107 of the Internal Revenue Code, petitioner's taxable income for the year 1942. Opinion Two questions are presented in this proceeding, one relating to the effect on petitioner's taxable income for 1942 and 1943 of the receipt by him in 1942 of $20,000 in cash and three notes for $15,000 each, and the other relating to the effect upon his taxable income for 1942 of the receipt of the note in the amount of $53,749.13. The petitioner concedes that the cash payment of $20,000 and the $15,000 note which was paid in December 1942 are includible in his income for that year. He contends that the two $15,000 notes which were paid in 1943 are includible in his income for that year, and not for 1942. He argues that while these notes were delivered in 1942, they were not intended *233 to be in payment of compensation or in satisfaction of the corporation's obligation to petitioner but were delivered as evidence of the corporation's obligation to make payments to him in the future. W do not agree with the petitioner. Notes are often given merely as evidence of a debt, and not in payment thereof, and in such instances the value of the notes is not income to the recipient in the year of receipt. Thus, in Schlemmer v. United States, 94 Fed. (2d) 77, cited and relied upon by petitioner, where a corporation at the end of 1927 was unable to pay a salary of $30,000 voted its president in the spring of that year and gave him a note, substantially all of which was never paid, as more permanent evidence of the debt, it was held by the Circuit Court of Appeals for the Second Circuit that the taxpayer did not realize income in the amount of $30,000 in 1927. The evidence presented does not bring the instant proceeding within the ambit of the Schlemmer case. While it is true, as petitioner points out, that we have testimony by him, and by the secretary-treasurer and counsel of the new corporation, to the effect that the $15,000 notes were given to evidence a debt *234 and not in payment thereof, other evidence convinces us to the contrary. An examination of petitioner's letter to the corporation of October 1, 1942, discloses that on that date the petitioner offered to settle the corporation's indebtedness to him of an amount in excess of $50,000, representing his share of profits resulting from sales, and an amount in excess of $100,000, representing substantial amounts he would be entitled to receive before the close of the year under outstanding contracts already signed, for $65,000, $20,000 of which was to be paid in cash and the remainder by three non-interest bearing $15,000 notes payable January 2, 1943, March 1, 1943, and June 1, 1943. This letter also indicates that petitioner voluntarily refrained from collecting the entire amount in cash in 1942 and proposed that the payments be spread in order to preserve the liquidity of the corporation. His proposal was accepted for the corporation by its board of directors on the same day it was made, and on October 20, 1942, the new corporation paid him $20,000 in cash and gave him three notes for $15,000, one of which was paid in December 1942, before maturity. The petitioner, as heretofore noted, *235 concedes that the $20,000 and the proceeds of the $15,000 note received in 1942 are properly includible in his income for that year, but urges that the two $15,000 notes payable and paid in 1943 were received by him as evidence of a debt. But we do not think that the $65,000 consideration he received in the settlement can be so separated. The cash and three notes were all given to him to settled an indebtedness for services rendered and not as evidence of the indebtedness. The term "income" as used in the Internal Revenue Code is not limited to cash income, United States v. Phellis, 257 U.S. 156, and income may result from the receipt of negotiable instruments to the extent of their fair market value, Cherokee Motor Coach Co., Inc. v. Commissioner, 135 Fed. (2d) 840. Petitioner has not shown that the three notes received were not negotiable or that they were not worth their face value. The income tax return filed by the new corporation for the period October 1, 1942, to May 31, 1943, indicates that on October 1, 1942, it was solvent and had cash on hand of $102,865.86, and that it continued to be solvent during that period and had cash on hand of $113,232.71 *236 as of May 31, 1943. Under the circumstances we hold that the respondent was justified in including the amount of $65,000 in petitioner's income for the year 1942. The remaining issue relates to the note for $53,749.13 received by the petitioner under date of February 28, 1942. The issue with respect to this note was raised by the respondent in an amended answer. It is his contention that the petitioner should have included in his income for 1942, the sum of $50,749.13, representing the face value of the note for $53,749.13 less $3,000 in cash received by petitioner and reported by him in his 1942 return. The burden was on the respondent to prove that the petitioner should have included this amount in income. He has not sustained this burden. The evidence presented discloses that from 1935 to February 28, 1942, the petitioner had actively participated in the business of the old corporation under an oral agreement or understanding with Paul Townsend, the owner of all of its stock, that he should receive 40 per cent of the profits of the corporation computed before deducting Federal and state incomes taxes. When Paul Townsend died on November 25, 1940, the petitioner was in poor physical *237 condition and was worried over the fact that he had nothing in writing to evidence the indebtedness of the corporation to him. The note for $53,749.13 was given to him merely as an evidence of this indebtedness and was not intended to be payment thereof. It contained no date of payment and no provision for interest. The receipt of such a note under the circumstances above outlined did not result in the actual or constructive receipt of income by petitioner during the year 1942. Schlemmer v. United States, supra; John Harvey Kellogg, 2 T.C. 1126. Decision will be entered under Rule 50.